

FILED

APR 04 2016

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

No.2:14-cv-0635 KJM AC PS

DOYLE HARTLINE
  Plaintiff.

v.

**Plaintiffs Amended Complaint**

NATIONAL UNIVERSITY
  Defendant.

_____

### JURISTICTION AND VENUE

1. Plaintiff brings this action under the Americans with Disabilities act, 42 U.S.C. 1201,

2. *Et seq. ("ADA").* section 504 0f the rehabilitation act of 1973, as amended at 29

3. U.S.C. 794 "The rehabilitation Act", and the persons with disabilities Civil Rights

4. Act M.C.L. 37.1101,*et seq.*("PDCRA"). this court has jurisdiction pursuant to the

5. Following statutes: 28 U.S.C. 1331 which gives the District Court original

6. Jurisdiction over civil actions arising under the constitution, laws and treaties of the

7. United States 28 U.S.C. 1343, and which gives the District Courts jurisdiction over

8. Actions to secure Civil Rights extended by the United States Government. Venue is

9. Appropriate in this judicial district under 28 U.S.C.1391because the incidents that

10. Gave  rise to this complaint occurred in this judicial district.

( 1 )

## PARTIES

1. Plaintiff is a citizen of the United States and resides in Sacramento County,

2. State of California, which is in this judicial district. Defendant National University is

3. Licensed and doing business in the County of Sacramento, and in the State of

4. California with over 23 Private Universities, and learning facilities in California

5. And Nevada. Defendant is the recipient of Federal funds through Federally funded

6. Student loans. Defendant is identified as a recipient for the purpose of the ADA.

7. Defendant markets education programs, and is required to conform to federal and

8. State laws.

9. ## GENERAL ALLEGATIONS

10. Plaintiff completed his course work for a masters degree in Education and needed

11. To complete the teacher training, and receive his masters degree, and a teaching

12. Credential Plaintiff needed to complete one semester of student teaching or find

13. Placement at a local school as an intern teacher and work for one semester to

14. Receive his teaching credential. National informed Plaintiff that students have the

15. Option of finding an intern teaching position if they did not want to student teach.

16.  National is aware of the school where the intern teacher is working,and the candidate

15.  Is required to take classes at National. Plaintiff attempted to find an Teaching

1.  Internship in local schools in the Sacramento area but was unsuccessful. Defendants

2.  would not provide any information of local schools where other students had found

3.  Positions as intern teachers. Defendants also did not provide leads or information

4.  Of any kind that would have helped Plaintiff when contacting schools to find an

5.  An intern teaching position. Plaintiff was unable to find an intern teaching position.

6.  Plaintiff was informed by most schools that he contacted that as a matter policy they

7.  Did not hire teachers until they had secured their teaching credentials. When Plaintiff

8.  Was taking his final classes at National Plaintiff was informed that National was

9.  Having difficulties Placing their students in local schools for student teaching. Had

10. Plaintiff been Informed of Nationals problems finding placement for their students

11. teachers at the time he visited the school, and during enrollment he would not have

12. Chosen to enroll in Nationals teacher training program. By withholding  information

13. From Plaintiff during his first visit a National to inquire into the teacher training

14. Program, and at his enrollment Plaintiff was unable to make an informed decision.

15. As a matter of policy and practice Defendants chose to withhold information from

16. Plaintiff. As a result Plaintiff suffered extraordinary damages to his health, and

16. Emotional wellbeing, loss of career ambitions, loss of income, retirement and medical

1. Benefits. Prior to enrolling at National University Plaintiff was informed by his

2. Doctor after an examination that "Plaintiff was in good health, free from disease

3. And should live to at least eighty five years of age". Plaintiff was in good health

4. And capable of working in the career he had chosen. Plaintiff was adapting to his

5. Orthopedic disability and capable of working full time, Plaintiff was looking forward

6. To working. Defendants engaged in multiple violations of the statute of frauds at the

7. Expense of Plaintiff health, well being and career. Plaintiff suffered great financial

8. Loss. Defendants carried out acts of intimidation and retaliation, causing serious

9. Injury to Plaintiffs health, and shortened Plaintiffs life expectancy. Defendants refusal

10. To Insure that the schools where they placed Plaintiff conformed to ADA regulations,

11. And deliberately refused to acknowledge and inform teachers and administrators at

12. Local schools of Plaintiffs disability. These deliberate and calculated acts denied

13. Plaintiff of the benefits, and protection of the ADA regulations and statutes.

14. Defendants acts were deliberate, and calculated acts of retaliation against Plaintiff

15. Because of Plaintiffs refusal to write letters of apology and accepting fault, and

16. Responsibility for wrong doing on Plaintiffs part for leaving his student teaching

16. Placement which was arranged solely by Defendants without any input from Plaintiff.

## BACKGROUND

1. Weeks Prior to Plaintiff enrolling at National University in October 2008, Plaintiff

2. Visited the school to learn about the teachers training program. Plaintiff had visited

3. The School previously but failed to inquire about disability services, and did not

4. Enroll in National University. After meeting a woman that lived in the same

5. Apartment complex as He did, and had graduated from National University and

6. Informed Plaintiff about the teacher training program and their accelerated program

7. And Her belief that taking one class a month allowed her to graduate quicker and

8. Begin Teaching. I returned to National University in around September 2008 prior to

9. Enrolling to ask if the school had an office for disabled student services, and if there

10. Were administrators at the school trained in the application of ADA regulations and.

11. If the staff had experience working with disabled students. Plaintiff stated at the time

12. Of enrollment that he was disabled and that He had restrictions on the amount of time

13. That he could sit and stand before he began to suffer severe pain that would lead to a

14. flair up and result In Plaintiff being bed ridden until he recovered. Plaintiff was told

1. That the school did have disabled student services available and experienced staff and

6. Administrators that were capable of applying the ADA regulations

2. Plaintiff next inquired about the quality of instruction, and stated that he was concerned

3. With students failure, and preventing students from dropping out of school and was

4. Interested in strategies to combat these issues. Plaintiff was assured that National was

5. Training teachers to deal with this problem and that he would not have any problems

6. Being placed in a local school for student teaching. Or finding a intern teaching

7. Position if he chose. Plaintiff was impressed with the options that were available.

6. After receiving his masters degree in education and teaching credential he planned on

7. Working with at risk students, African Americans, Native Americans, and Hispanics.

8. Prior to Plaintiff completing his course work for his masters degree he had contacted

9. Tribal members on the Yakima Nation in Washington, where family members lived

10. To inquire about teaching opportunities, Plaintiff also contacted school districts in

11. The Bay Area regarding teaching positions both areas expressed a need for teachers

1. That wanted to work with students that were having a difficult time with education.

2. Having been reassured by National that his disabilities needs would be met, and that

3. The school had a disabled students services available for Plaintiff, and that his

4. Academic needs would be met, and that Plaintiff would have any difficulties finding

5. An intern teaching position where he would be the teacher of record, and would

6. Receive a salary, although less than what a tenured teacher would receive. Based on

7. The information that was provided by the enrollment councilor provided Plaintiff

8. Enrolled, and started class on October 2008. Prior to starting his first class Plaintiff

9. had been too active and the prolonged sitting at his computer caused Plaintiff to

10. Have a flare up in his spinal condition, and as a result he could not complete his

11. Course work. Plaintiff contacted his Instructor who urged him to contact disabled

12. Student services. Plaintiff went to National University and asked the secretary where

13. the disabled student services was located and the secretary informed Plaintiff that the

14. School did not have an office of disabled student services, and that the Plaintiff should

15. See the Director of Operations at the school. Plaintiff contacted the director of

16. Operations and presented her with a note from Plaintiffs doctor. He also brought with

17. Him his chart notes that described his orthopedic/spinal problems, and his limitations

1. Which he offered to the director to observe and copy. The director stated to

2. PlaintiffThat the doctors note was sufficient.  As a result of presenting his doctors note

3. Plaintiff was not charged the $1660 for the first class, and allowed to take the class

4. Again. While taking classes at National Plaintiff informed his instructors that because

5. Of his disability he would have to leave the class room. and stretch, and walk around

6. For about five to ten minutes to offset the effects of prolonged sitting during the long

7. Class hours. While taking classes at National Plaintiff was able to advocate for

8. Himself with the individual instructors. When taking classes on line on his home

9. Computer Plaintiff had an orthopedic chair, and was able to regulate the time he would

10. Sit in front of his computer limiting the time that he spent sitting as a result Plaintiff

12. Did not have another flair up while taking course work for his Masters degree in Ed.

13 However when placed at Kerr middle school in Elk Grove California, Plaintiffs health

14. Was jeopardized by the refusal on Nationals representatives to ensure that Plaintiff

1.                          FRAUD  COUNT 1

2. Several weeks prior to Plaintiff enrolling at National University in October 2008

3. Plaintiff met with an admission councilor at National University Sacramento

4. Campus for the purpose of 1), inquiring if the school had a disabled students office,

5. And 2), if their were administrators at the school that were experienced with ADA

6. Regulations as they apply to disabled students. Plaintiff asked 3), If the staff had

7. Experience working with disabled students and Plaintiff was assured that they did.

8. Plaintiff next inquired 4),about the quality of instruction stating he was concerned

9. About Student failure and the problem of students dropping out of school and wanted

10. To learn about strategies to combat the issue. Plaintiff was assured that National was

11.  Training their students in the teacher training program to learn about addressing the

12. Problem. Plaintiff next asked 5), about Placement options when he completed his

13. Course for his Masters degree in Education and was informed that there were two

14. Options available to complete his program, and receive both his Masters degree, and

 15.A teaching credential. Students could either seek a teaching internship at a local

16.School where he would be paid a lesser percentage of what tenured teachers were

17.Paid or that Plaintiff could sign up for student teaching, and receive his Masters

18.Degree in Ed, and a teaching credential after student teaching for one semester.

19.Plaintiff was excited about the prospects, and the program that National had for

20 Teacher training. Plaintiff was especially impressed by the way his questions were

1.  Answered and as based on what he had been told by the admissions councilor

2.  Plaintiff decided to enroll at National University as a graduate student in the

3.  Teacher training program for the purpose of receiving a Masters degree in

4.  Education with an attached teaching credential. Plaintiff was also reliant on

5.  Nationals publications, and the statements made by the staff which Plaintiff later

6.  Found the statements to be false, and made as inducements to entice

7.  Plaintiff into enrolling in Nationals Teacher training program for the purpose of

8.  Plaintiff receiving a Masters Degree in education, with an attached teaching

9.  Credential.  Prior to completing his course work for the Masters degree Plaintiff

10. Was informed by National University representatives that National was having a

11. Difficult time placing teacher candidates at schools in the Sacramento, and

16. Surrounding areas. Plaintiff decided to find an intern teaching position, and went

17 To speak to the administrative staff and was certified as being qualified to become

18. An intern teacher. Plaintiff asked the administrator for information regarding schools

19. Where previous National students had found internships and was told by the

20. administrator that there was no information regarding schools that had hired National

21. Teacher candidates Plaintiff contacted many of the schools an could not find a

22. Position as an intern teaching position. Plaintiff next signed up for student teaching,

23. And informed the director of student teaching placement of his disability, and his

24. Need for modifications and when placed at a school for student teaching, and asked

1. Her to notify teachers, and administrators at schools where he may be considered for

2. A student teaching placement to please inform them prior to an interview that I was

3. A disabled, and older student. Defendant stated that she could not reveal Plaintiffs

4. Disability or age because of <u>privacy issues</u>. Plaintiff had signed a waiver allowing

5. National to release information to local schools for the purpose of placing student

6. Teachers in local schools Plaintiff offered to create another waiver allowing National

7. To release information of age and disability. Plaintiff returned several weeks

8. Later with his medical records, and disability certification from the state of

9. California for the director to review and use when developing a plan for modification

10. And accommodation. The director refused to look at the medical records, notes and

11. Certification from the state. When being placed as a student teacher Plaintiff did

12. Not receive placements that conformed in any way to what he was told by Defendants

13. At time of enrollment, and was published in Nationals publications. As a result of

14. Defendants actions Plaintiff was made to suffer pain, and apprehension and severe

15. Damages to his health. As a result Plaintiff is unable to work and suffers from

16. Financial loss. Defendants assertions at the time of enrollment concerning statements

17. Made about the quality of education and that Defendants were training teachers to

18. Deal with the problems of student failure and drop outs was false. the true facts were

19. That Plaintiff would not be placed as a student teacher according to the statements

20. Made by Defendants and according the guidelines of Defendants publications.

21. . Defendants did not have a disabled services office or staff trained at Nationals

22. Sacramento campus. When the Defendant made these representations they knew them

23. To be false, and these representations were made by the Defendant with the intent to

24. Defraud and deceive plaintiff and with the intent to induce Plaintiff to act in the

25. Manner herein alleged  to enroll at National University and at the time Defendant

26. Made these promises to Plaintiff, Defendant had no intention of performing them.

27. As proximate result of defendants fraud and deceit and the facts herein alleged

28.  Plaintiff suffered great damages and seeks monetary relief in the amount of

29.  15,million dollars.


### COUNT

### VIOLATION OF 34 CFR 104.47 (b)

### COUNCELING DISABLED STUDENT TO ACCEPT LESSER CAREER TRAINING

### 34 CFR 104.43 (C )

1.  Plaintiff enrolled at National University in October 2008 as a graduate student in

2.  The teacher training program, for the purpose of obtaining a Masters degree in

3.  Education and a teaching credential. Plaintiff never obtained the benefit of the

4.  Promises made by Defendants at time of entry, and from staff and found in Nationals

5.  Printed documents. Specifically placement in a classroom with a master teacher that

6.  Had the same or similar Masters degree and credential as those sought by the

7.  Plaintiff. Plaintiff was denied placement in classrooms where he would have the

8.  Benefits of ADA and the modifications and accommodations needed and

9.  Recommended by his doctor. Defendants refused all attempts by Plaintiff to receive

 The ADA accommodations, and modifications he requested. While trying to resolve

1. The issues that flowed out denial of ADA benefits, and Placement in a classroom

2. Where the teacher had the required degrees and credentials Plaintiff received a letter

3. From Dory Foster of National student relations coordinator dated January 18,2013.

4. The substance of the letter was to inform Plaintiff of a new program that offered only

5. A Masters of Arts in education without the teaching credential. Plaintiff had been

6. Contacted several times by Dr Jo Birdsell, who urged me to take this option. Stating

7. That it was all she could do for me. I had already completed my course work for the

8. Masters degree in Education. Defendants wanted me to take an additional class and

9. Charge me $1660. If I followed the inducements made by National staff I would not

10. Be able to teach. The defendants were that I was disabled and had enrolled in a M.A.

11. Teaching program with an attached credential so that Plaintiff could have a career

12. Teaching. As a result of the Defendants actions Plaintiff has suffered great financial

13. Loss, medical and retirement benefits in violation of CFR 104.47 (b), and

14. CFR 104.43. Plaintiff monetary relief in the amount stated at the end of the fraud

15. Charge 15 million dollars.


Singed Doyle Hartline April 2, 2016

# SAN FRANCISCO ORTHOPAEDIC SURGEONS
## MEDICAL GROUP, INC.

Joseph F. Haggerty, M.D.
Ken Hsu, M.D.
William A. McGann, M.D.
William H. Montgomery, M.D.
James F. Zucherman, M.D.

One Shrader Street, Ste 450
San Francisco, CA 94117
(415) 750-5835
(415) 750-8103 fax

October 21, 2008

To whom it may concern:

Dean Hartline underwent lumbar spine surgery. Due to his surgery the patient has ongoing degenerative disc disease, causing him to have flare ups several times per year. Due to his flare up in the month of October, the patient was bed bound which prevented him from completing his school work and other tasks. If you have any questions pleas contact my office.

Sincerely,

Dr. Zucherman

JOSEPH F. HAGGERTY, MD
JAMES F. ZUCHERMAN, MD
WILLIAM A. MCGANN, MD
KEN Y. HSU, MD
WILLIAM H. MONTGOMERY, III, MD
MATTHEW D. HANNIBAL, MD
DIMITRIY G. KONDRASHOV, M.D.
PETE BADUA, PA-C
MYLINH BUI, PA-C
JOHN KIM, PA-C
KRISTIN ALDERISIO, PA-C

**SAN FRANCISCO ORTHOPAEDIC SURGEONS MEDICAL GROUP INC.**

PRACTICE LIMITED TO ORTHOPAEDIC SURGERY

ONE SHRADER STREET
SUITE 450
SAN FRANCISCO, CA 94117
(415) 750-5860
FAX (415) 750-5919

April 16, 2007

Mr. Dean Hartline
8795 La Riviera Drive, #83
Sacramento, CA 95826

Dear Mr. Hartline:

The following is a report covering your visit to our office on April 16, 2007.

**Discussion:** Mr. Hartline has to sit in class in school, but he can only tolerate sitting for two hours at a time because of his chronic pain. He needs to have his school schedule adapted to his physical limitations.

**Diagnosis.**

1. Late postoperative, lumbar spine
2. Chronic pain

## RECOMMENDATIONS

**Medications.**

• Analgesic: Methadone

## PATIENT QUESTIONNAIRE

In the office today, the patient completed a pain questionnaire, providing the following information:

**McGill questionnaire.** Given a list of descriptive terms to select from, the patient describes his pain as stabbing, sharp, stinging, aching, tender, tiring, cruel, miserable, tearing, and agonizing.

**Functional Capacity Evaluation.** On the Oswestry Function Assessment, Mr. Hartline selects the following responses:

Pain Intensity: The pain is severe and does not vary much.
Personal care: Washing and dressing increase the pain, and I find it necessary to change my way of doing it.

**RE: Dean Hartline**
**April 16, 2007**
**Page 2**

Lifting:  Pain prevents me from lifting heavy weights, but I can manage light to medium
weights if they are conveniently positioned.
Walking:  Pain prevents me from walking more than 1/2 mile.
Sitting:  Pain prevents me from sitting more than 1 hour.
Standing:  I cannot stand for longer than 1/2 hour without increasing pain.
Sleeping:  Because of pain, my normal night's sleep is reduced by less than one-quarter.
Social Life:  Pain has restricted my social life and I do not go out very often.
Traveling:  I get extra pain while traveling, which compels me to seek alternative forms of
travel.
Changing Degree of Pain:  My pain is neither getting better nor worse.

Oswestry score: 60%

**Pain profile.**  The patient reports new symptoms in his low back and legs, and necks and
arms.  On a 10-point scale, the patient rates his pain as 8 at its best.  It is at 8 most of the time.
It rates 10 at its worst.

**Activity profile.**  The patient reports his pain is better with walking and lying on the side.
His pain is made worse by sitting, rising from sitting, lying on the stomach, driving, and
bending forward.  The patient reports that he is able to sit for 1-1.5 hours with no pain.  He
reports that he is able to stand for 30 minutes with no pain.  He is able to walk for 40 minutes
with no pain.  Mr. Hartline estimates his time in a typical day is spent driving 1 hour,
housekeeping 1 hour, walking 45 minutes, and in bed 8 hours.

**Medications.**  The patient reports that he is currently taking Methadone and Zoloft.  Both of
these medications help with his pain.

**Pain diagram.**  On a body diagram, the patient reports numbness in the left anterior upper
arm; left anterior forearm; and right dorsal medial foot.  He reports discomfort in the left
anterior neck; left anterior thigh; left anterior knee; midline posterior neck; midline upper
back; and left, right, and midline buttock.  He reports both numbness and discomfort in the
left anterior shoulder.

**Current status.**  Mr. Hartline reports that he is not currently working.  The patient states
there is no litigation pending regarding his medical problems.

Sincerely,

James F. Zucherman, M.D.

JFZ/mgw
D: 041607 T:041807

**OFFICE OF STUDENT AFFAIRS**

11255 North Torrey Pines Road, La Jolla, CA 92037-1011
(858) 642-8036 • fax (858) 642-8732 • www.nu.edu

January 18, 2013

Doyle Hartline
8795 La Riviera Dr. Apt 83
Sacramento, CA 95826-1828

RE:  ID#: 020661565

Dear Mr. Hartline,

This letter is a follow up to the letter sent from Dr. Joseph Zavala dated November 30, 2012.  Please be aware of the future deadlines indicated in that correspondence regarding the Teacher Credentialing program.

I wanted to bring to your attention an option at this time to complete a master's degree excluding the teaching credential.  I understand this option has been brought to your attention by Dr. Jo Birdsell in previous meetings she had with you.  As of February we have new program called the Master of Arts in Education which is a different version of your degree without the teaching credential.  Students are allowed to switch to this program and take only one additional course to earn the master's degree.  This course is TED670 and it will be offered as an online course in the month of February.

If you are interested in pursuing this Master of Arts in Education program, please contact me if you have questions or to begin the process.

Sincerely,

Dory Foster

Dory Foster
Student Relations Coordinator
Office of Student Affairs
858-642-8035

**Specific Program Requirements for Clinical Practice: Student Teaching Placement:**

20. I authorize National University to release all pertinent information to any school district for the purpose of securing my student teaching placement. *Initial* _____

21. I understand that National University will contact districts to make arrangements for my student teaching placement. I understand that I am not to contact districts and schools directly and that doing so has a negative impact on National University's relationship with our district partners. *Initial* _____

22. I understand that student teaching placement takes place twice a year to coincide with the beginning of the fall and spring public school semesters. I also understand that I must meet all eligibility requirements in order for placement arrangements to be made on my behalf. As a result, I must complete all eligibility requirements 90 days prior to the beginning of the semester that I want to student teach. *Initial* _____

23. I understand that student teaching must be conducted at a school site that is equivalent in status to a public school that teaches to the CA State Standards, is in a classroom environment that meets the age group, curriculum, schedule, diversity, and classroom number requirements, and is taught by an approved supervising teacher who has a certification to teach English Language Learners. *Initial* _____

24. I understand that student teaching must be conducted in a full-day, regular multiple or single subject classroom for a minimum of 90 instructional days (in-service training days count towards the 90 days, holidays do NOT). I understand that placement will be in public schools and that after school programs, some tutorial intervention programs and outdoor education programs do not qualify as appropriate placement. *Initial* _____

25. I understand if I am under contract in a non-traditional, private, non-public, court and /or community alternative school which teaches California curriculum standards, I am required to complete one month of student teaching in a traditional public school setting. I understand that if I am under contract in a classroom or school that does not teach California curriculum standards, that this setting will not be acceptable for student teaching. *Initial* _____

26. I understand that I must student teach in the appropriate credential area. I understand that "credential area" is defined by two criteria: 1) either multiple or single subject, whichever I have completed the correct coursework for and 2) in the subject area in which I have met subject matter competency. *Initial* _____

27. I understand that student teaching placement requires an unbiased evaluation and as a result, I will not be placed in a school where family members or personal friends work or attend the school. *Initial* _____

28. I understand that as part of my requirements to begin student teaching that I must attend a student teaching screening interview as well as a student teaching orientation. *Initial* _____

29. I understand that if I apply for half of my student teaching to be waived, I must submit an application and include evidence of: 1) one year of teaching experience as the teacher of record in a classroom, 2) average or above average classroom performance evaluations completed by the school administrator, and 3) submission of the NU Supervising Administrator Evaluation Form. The documents will be submitted and reviewed by a Lead Faculty member who will approve or disapprove the request. I must receive a satisfactory grade of "S" in TED630C and TED630D Student Teaching. If an unsatisfactory grade of "U" is received in either course, I understand that I must complete the waived courses, TED630A and TED630B, and am responsible for the full tuition costs for these courses. *Initial* _____

30. I understand that if I must move out of California prior to completing my student teaching, that National University will attempt to arrange an out of state, courtesy student teaching placement. However, I understand that placement cannot be guaranteed. *Initial* _____

X _____      O2O661565      2.7.2009
Candidate Signature                           ID #            Date

_____      SL      1/7/05
Credential Advisor                           Campus            Date



**SCHOOL OF EDUCATION**

11255 North Torrey Pines Road, La Jolla, CA  92037-1011  ·  Phone (858) 642-8320  ·  Fax (858) 642-8724  ·  www.nu.edu

# SITE SUPPORT PROVIDER REQUIREMENTS

Candidate _____ Student ID _____

Student Teaching Dates _____

Grade _____ Class Size _____ ☐ Multiple Subject   ☐ Single Subject: _____

School _____ Phone _____

School Address _____

District _____

Site Support Provider _____

Principal _____ University Support Provider _____

**A. Criteria for Supervising Teacher**
1. Recommendation from the principal
2. Tenure in the school district
3. Possession of a valid California teaching credential matching the candidate's credential sought.  Special Education: Masters Degree
4. State-adopted core curriculum content standards taught in the classroom
5. Competent in all six domains of the Teaching Performance Expectations
6. Valid authorization to teach English Language Learners (ELL) in the general education classroom (in one of two placements).  This may be waived for Single Subject candidates.

**B. Site Support Provider's and Candidate's Roles and Responsibilities**
1. Read and follow National University's *Student Teaching Handbook*
2. Follow Responsibilities Chart and Timeline

**C. Verification**
I understand the commitment and my responsibility pertaining to each of the above elements of the Student Teaching Program.

_____          _____
*Candidate's Signature*                                                          Date

I verify that I fulfill the criteria for a Supervising Teacher.  I have reviewed my roles and responsibilities for the Student Teaching Program and I will cooperate in helping the candidate meet program requirements.

_____          _____
*Site Support Provider's  Signature*                                        Date

I verify that the Supervising Teacher fulfills the criteria for a Supervising Teacher.  I will provide appropriate support in helping the Supervising Teacher and candidate meet program requirements.

_____          _____
*Principal's Signature*                                                           Date

**Please return this form to the University Support Provider.**



**SCHOOL OF EDUCATION**

# STATUS OF PROSPECTIVE INTERNSHIP BASIC REQUIREMENTS

Prospective Intern: _Doyle Hartline_          Date: _1/4/2016_

The following information verifies the status of Internship Basic Requirements met for consideration of a National University Internship Credential for the above named. Although the requirements marked below show the progress of the above named prospective internship candidate, please understand that all items must be complete and employment information must be verified during a Faculty Interview in order for this individual to be deemed intern eligible. Once this individual is intern eligible, National University will recommend for an Internship credential.

COMPLETED   STILL NEEDED

☑ ☐ Verification of fingerprint clearance using one of the following documents: Certificate of Clearance, Emergency Substitute Permit or a California teaching credential.

☑ ☐ Proof of completed bachelor's degree from a regionally accredited institution. Official copies of transcripts must be on file with the National University Office of the Registrar before applying for the Internship Credential.

☑ ☐ Proof of subject matter competency provided with originals of your test scores for the CSET, MSAT, PRAXIS, SSAT as appropriate, or for Single Subject or Education Specialist only, proof of an approved subject matter preparation program.

☑ ☐ Verification of completed U.S. Constitution requirement either by coursework or by examination.

☑ ☐ A negative result on a tuberculosis (TB) test taken within the last four years.

☑ ☐ Proof of passage of Basic Skills requirement by examination.

n/a ☐ ☐ Multiple Subject (MS) or Single Subject (SS) BCLAD Internship Credential applicants must prove that they have passed the speaking component of the BCLAD examination in their target language (if applicable)

In addition to the above requirements, 120 clock hours of required pre-service coursework/field experience, are required as defined below:

COMPLETED   STILL NEEDED

**MULTIPLE SUBJECT:**
☐ ☐ TPA6 *(pre catalog 72)*   or ☐ TED601 *(catalog 72)*
☐ ☐ TED621A
☐ ☐ TED621B

**SINGLE SUBJECT:**
☐ ☐ TPA6 *(pre catalog 72)*   or ☐ TED601 *(catalog 72)*
☑ ☐ TED623
☑ ☐ TED624

**SPECIAL EDUCATION:**
**Mild/Moderate or Moderate/Severe**
☐ ☐ EXC620
☐ ☐ EXC602A
☐ ☐ TED621B

**Deaf and Hard-of-Hearing**
☐ ☐ EXC620
☐ ☐ EXC604
☐ ☐ TED621A

Verified by _Monica Newsome_                    _1/4/2016_
*NAME OF CREDENTIAL ADVISOR HERE*              *Date*